# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN F. WRIGHT, JR.

      Petitioner,

           v.

JOHN KERESTES, et al.                  No. 13-6204

      Respondents.

## MEMORANDUM

YOHN, J.                                            November 17, 2014

      Petitioner John F. Wright filed a pro se 28 U.S.C. § 2254 habeas petition, which I referred to a magistrate judge. The magistrate judge issued a report and recommendation that proposed denying Wright's petition because he failed to file it within § 2254's one-year limitations period, and because he had neither demonstrated that statutory tolling or equitable tolling was applicable, nor made a showing of actual innocence.

      Wright objected to the magistrate judge's finding that equitable tolling did not apply, and he also claimed that the magistrate judge failed to consider the constitutionality of his sentence under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Because the court finds that equitable tolling and *Alleyne* are inapplicable to Wright's case, it will overrule his objections and dismiss his petition as time barred under § 2254.

1

I.      **Factual and Procedural History**

A.      **Plea Agreement and Sentencing**

In 2005, the Commonwealth of Pennsylvania charged John F. Wright with numerous offenses involving cocaine distribution.  The charges stemmed from allegations that he delivered cocaine to a confidential informant four times while also using a cellular phone to facilitate these deals.[1]  The Commonwealth also alleged a fifth deal in which Wright possessed cocaine with intent to deliver and possessed a firearm.

As part of a counseled plea agreement, he pleaded guilty to these offenses in the Court of Common Pleas of Lancaster County on July 26, 2005.  His plea agreement involved the Lancaster County District Attorney's Office, as well as the United States Attorney's Office for the Eastern District of Pennsylvania.  It required Wright to plead guilty to the state charges and serve fifteen to thirty years in prison.  In exchange, the United States Attorney's Office agreed not to indict Wright on federal charges.  That same day, the Honorable Emanuel Cassimatis sentenced him to imprisonment of fifteen to thirty years in accordance with this agreement.

B.      **Direct Appeal Process**

Using the services of his second attorney, Michael V. Marinaro, who was not his plea agreement counsel, Wright appealed his sentence to the Superior Court.  Marinaro filed a notice of appeal on August 24, 2005, and submitted his statement of matters for appeal on October 11, 2005.  Marinaro claimed that Wright did not enter into his guilty plea knowingly, intelligently, and voluntarily.  He also argued that Wright's trial counsel through the plea bargaining process was ineffective.  On March 22, 2006, the Superior Court dismissed Wright's appeal for Marinaro's failure to file a brief with it.

---

[1] Delivery of cocaine is illegal under 35 Pa. Cons. Stat. Ann. § 780–113.  Using a cell phone to facilitate a delivery of cocaine is illegal under 18 Pa. Cons. Stat. Ann. § 7512.

Just over a month later, Marinaro wrote Wright a letter concerning the status of his case. In this letter, dated May 2, 2006, Marinaro first apologized to Wright for not contacting him earlier: "I would like to extend an apology to you for my failure in not responding sooner to your letters of inquiry."  He then told Wright that he had met "with Assistant District Attorney Ken Brown regarding the appeal of your guilty plea" and that "Brown advised [him] that the plea was a voluntary, knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences."  Calling Brown's response a "[t]ypical answer," he went on to state that Brown "threatened or suggested that if the plea was overturned on the direct appeal the matter would be tried in Federal Court."  He next proceeded to tell Wright that he thought Wright had ineffective assistance of counsel at the plea bargaining stage, and they should pursue this claim in a PCRA petition.  He closed by stating that he "shall consult with ADA Brown regarding a potential PCRA, while inquiring about his thoughts on suppression issues.  Following this meeting I will telephone your counselor, Ms. Summers, and speak with you directly."

Marinaro wrote Wright another letter a few months later.  On August 12, 2006, Marinaro told Wright the following about the status of his case:

> Please be advised that once again I have reviewed your case with prosecuting attorney Ken Brown.  He stands by his position that they will seek Federal charges rather than State based upon the reasoning as outlined in your guilty plea and sentencing on July 26, 2005.  Please review the transcripts and contact my office regarding your desire to proceed with an ineffective assistance claim on collateral appeal.

There is no evidence that Wright pursued this option in a reasonable time period.

Over a year later, on December 20, 2007, Wright filed a pro se motion nunc pro tunc to reconsider his sentence, which was denied about a week later.

## C.     State Collateral Review Process

Approximately four years later, sometime in 2010, Wright's family hired a new lawyer (his third), Cheryl J. Sturm, to investigate the status of his case.  On December 3, 2010, Sturm wrote Wright a letter telling him that his direct appeal had been denied because Marinaro had failed to file a brief, and she asked Wright for permission to file a PCRA petition for him.

Sturm then filed a PCRA petition for Wright on March 3, 2011.  In it, she claimed that Wright's PCRA petition should not be time barred and that he was denied the effective assistance of counsel during plea bargaining, at his plea hearing, and in his direct appeal.  On June 13, 2011, the PCRA court issued a Rule 907 notice suggesting that the court lacked jurisdiction to address the PCRA petition because it was untimely.  Wright's new counsel responded, arguing that the court should have treated his December 2007 motion to reconsider his sentence as a timely filed PCRA petition.  The PCRA court, however, dismissed his petition as untimely on July 22, 2011.

Wright filed a pro se notice of appeal less than a month later.  Sturm then withdrew as his counsel, and MaryJean Glick, a public defender (his fourth attorney), was appointed to represent him on his PCRA appeal in February 2012.  On April 26, 2012, Glick filed a statement of matters for appeal.  The Superior Court affirmed the PCRA court's dismissal on timeliness grounds on November 9, 2012, finding that Wright—by way of Sturm's representation—had failed to properly plead any of the exceptions to the PCRA's timeliness requirement.

The next month, Wright filed a pro se petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied on July 16, 2013.

####     D.        Habeas Corpus Petition

Wright next filed a habeas corpus petition under § 2254 with this court on October 16, 2013.[2]  As grounds for relief, he claimed that he did not enter into his plea knowingly, voluntarily, and intelligently; that his counsel during the plea bargaining process was ineffective; that his counsel on direct appeal was ineffective; and that his initial PCRA counsel was ineffective.  On November 25, 2013, I referred the petition to a magistrate judge for a report and recommendation.

The magistrate judge issued a report and recommendation on July 31, 2014, recommending that Wright's petition be dismissed as time barred.  Specifically, the magistrate judge concluded that Wright's start date for the one-year period in which he had to file his habeas petition was April 21, 2006, the date his judgment entered on his direct appeal became final in the state court.  The magistrate judge also found that both statutory and equitable tolling were inapplicable, and Wright had not made any showing of actual innocence.  The magistrate judge therefore determined that Wright exceeded the one-year limitations period by filing his petition on October 16, 2013.

Wright filed timely objections to this report on August 15, 2014, in which he raised the following arguments: equitable tolling should apply—and his petition should thus not be time barred—because his direct appeal attorney, Marinaro, abandoned him during his direct appeal and was, therefore, ineffective; and the magistrate judge failed to address the constitutionality of his sentence under *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

---

[2] As the magistrate judge noted, even though the court docketed his petition on October 23, 2013, Wright's filing date is October 16, 2013, the date he signed his habeas petition.  The federal court employs the prisoner mailbox rule, which deems a prisoner's petition filed on the date it is given to a prison authority to mail to the federal court. *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

## II.      Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254, governs the court's review of this petition.  Under AEDPA, when a petitioner is in

custody pursuant to a state court judgment, a district court shall entertain an application for writ

of habeas corpus only if the custody violates "the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a).  Where a habeas petition has been referred to a magistrate judge

for a report and recommendation under 28 U.S.C. § 636(b)(1)(B), the district court reviews de

novo "those portions of the report or specified proposed findings or recommendations to which

objection is made." 28 U.S.C. § 636(b)(1).  After conducting this review, the court "may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." *Id.*

## III.     Discussion

### A.       AEDPA's Statute of Limitations

Under AEDPA, state prisoners have one year to file their federal habeas petitions.  28

U.S.C. § 2244(d)(1).  This limitation period's starting date depends on the case's circumstances.

Section 2244(d)(1) sets forth four alternatives that trigger this starting date, with the latest

applicable one governing the petitioner's case.  *See id.* § 2244(d)(1)(A)–(B).  The first alternative

establishes the starting date that governs unless one of the other three applies.  In the first

alternative, the one-year period starts on the date the judgment becomes "final by the conclusion

of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1).

The state court process therefore establishes this final judgment date.  In Pennsylvania, a

defendant must file an appeal within thirty days after the court's entry of the appealable order.

Pa. R. App. P. 903(a).  Consequently, a defendant's judgment is final if not appealed from in this

timeframe. *Id.*; *see also Commonwealth v. Hernandez*, 79 A.3d 649, 652 (Pa. Super. Ct. 2013) (stating that defendant's judgment was final because he failed to appeal within thirty days).

Here, Wright's judgment became final on April 21, 2006. He pleaded guilty and was sentenced to fifteen to thirty years' imprisonment on July 26, 2005. Marinaro, his appellate counsel, then filed a timely notice of appeal on August 24, 2005, and submitted his statement of matters for appeal on October 5, 2005. Marinaro, however, failed to file a brief, resulting in the Superior Court's dismissal of Wright's appeal on March 22, 2006. Wright then had thirty days to seek permission to file an appeal with the Pennsylvania Supreme Court. He failed to do so, which rendered his judgment final on April 21, 2006.

The court next considers whether any other § 2244(d)(1) alternative applies and sets a later starting date than this final judgment date. If none does, then April 21, 2006, was Wright's starting date, and he had until April 21, 2007, to file his habeas petition, absent statutory or equitable tolling or a showing of actual innocence.

The second possibility arises when state action that violates the Constitution or federal law prevented the petitioner from filing his habeas petition. 28 U.S.C. § 2244(d)(1)(B). The magistrate judge addressed the applicability of this alternative to Wright's case. The magistrate judge considered whether Wright's claim that the Superior Court had failed to notify him properly of his direct appeal's dismissal constituted a "state-created impediment to filing." Read broadly, Wright's claim is that the Superior Court failed to properly docket the time and manner of notice to Marinaro of the appeal's dismissal, which precluded Wright from knowing that it had been dismissed and thus created an impediment to a timely habeas filing.[3] Wright grounds this argument in the Superior Court's alleged failure to comply with Pennsylvania Rules of

---

[3] In Wright's objections to the report and recommendations, he claims that the "Clerk of Superior Court, never notify [sic] petitioner that said counsel never filed brief within Superior Court."

Criminal Procedure 113 and 114.  But § 2244(d)(1)(B) makes clear that it must be a state-created impediment "in violation of the Constitution or laws of the United States."  Wright claims only a violation of a state rule of criminal procedure, so this provision is inapplicable.

This leads to consideration of the third alternative, which occurs when the defendant asserts a constitutional right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Id.* § 2244(d)(1)(C).  If it applies, the starting date is the date on which the Court initially recognized this right.  *Id.*  Here, Wright's claims in his petition are all based on alleged violations of his Sixth Amendment right to effective assistance of trial counsel and direct appeal counsel and his Due Process right to enter into a plea agreement knowingly and voluntarily.[4]  Given the longevity of these rights, recognized by the Court years before Wright's conviction and postconviction process, he cannot assert them under § 2244(d)(1)(C).  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

The court now turns to the fourth and final potential alternative, in which "the one-year period of limitation commences under section 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered."  *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004).  Stated differently, § 2244(d)(1)(D) gives the petitioner a starting date of the date that he actually discovered the predicate facts only "if [the] vital facts could *not* have been [discovered through due diligence]."  *Id.* (emphasis added) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)).  If that is not the case, the starting date is the date the predicate facts could have been discovered through due diligence.  Due diligence means "reasonable diligence in the circumstances."  *Id.*  As a result, the

---

[4] Wright raises a new claim in his objections to the magistrate judge's report and recommendations that is based on a constitutional right recognized in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  This claim, which he failed to raise in his petition, is discussed in Part III.C.

8

court's task is to "determine the precise date on which" the petitioner could have discovered the predicate facts through reasonable diligence, provided he was able to discover them through reasonable diligence. *Wilson v. Beard*, 426 F.3d 653, 659 (3d Cir. 2005).

The magistrate judge concluded that this alternative was inapplicable, but Wright's objections, construed broadly, suggest that he believes it applies to his claim of ineffective assistance of direct appeal counsel. In his objections, Wright states several times that he did not learn until 2010 about Marinaro's failure to file a brief and the resulting dismissal of his 2006 appeal. Specifically, he alleges that he learned this fact in December 2010 only after his PCRA counsel, Sturm, told him in a letter. Wright thus seems to argue that due diligence would not have unearthed the factual predicate of this claim any earlier than December 2010.

The court realizes that Wright, acting with reasonable diligence, probably could not have discovered the factual predicate for this claim against Marinaro by April 21, 2006, the date his judgment became final. As discussed previously, Wright's judgment became final on this day because Marinaro's appeal was dismissed on March 22, 2006, for failing to file a brief, and Marinaro did not appeal this decision within thirty days, which ended April 21, 2006. In those thirty days, Wright alleges that Marinaro did not inform him that his appeal had been dismissed. And on May 2, 2006, less than two weeks after Wright's judgment became final, Marinaro sent Wright a letter in which he declined to tell him explicitly that the appeal had been dismissed for his failure to file a brief and implied that his appeal was still ongoing. Under these circumstances, a reasonably diligent prisoner would not have questioned Marinaro's letter; he would have accepted it as a full and accurate update on his case. So as of May 2006, Wright's limitations period on this claim could not have started.

But then Marinaro sent his August 12, 2006, letter to Wright. This letter, though also not explicitly stating that Wright's direct appeal had been denied for his failure to file a brief, strongly suggested that Wright's direct appeals process was over.  Indeed, he instructed Wright to "contact [his] office regarding your desire to proceed with an ineffective assistance of counsel claim on collateral appeal."  Wright now had a compelling reason to inquire further into the status of his direct appeal: Marinaro was basically telling him that his direct appeal process was over.  Wright, however, neither alleges that he inquired further nor claims that he contacted Marinaro in any way in response to this letter.

At that time, Wright himself or his family or others at his request could have inquired to determine the status of his direct appeal.  They could have followed up with Marinaro, spoken with a different lawyer, or contacted the Superior Court directly.  Wright alleges none of these actions.  Moreover, as Wright admits in his objections, he learned in 2010 that Marinaro had failed to file a brief, causing his appeal to be dismissed, "due to [his] family hiring [Sturm] to investigate what was going on with my Direct Appeal."  This suggests he could have discovered this fact much earlier, after being placed on notice in August of 2006.  *See Schlueter*, 384 F.3d at 75 (finding that petitioner who enjoyed the "benefit of his family's assistance, involvement and resources" could have discovered the factual predicate of his claim earlier).

In short, with reasonable diligence, Wright could have learned about Marinaro's failure to file a brief shortly after Marinaro's letter of August 12, 2006, which is later than his final judgment date of April 21, 2006.  In setting an exact date, as the court is tasked with doing, Wright, as a prisoner, should be given some leeway.  Though this letter is dated August 12, 2006, the record does not reflect when Wright actually received the letter.  And even after he received the letter, he could not have immediately discovered the predicate fact, that is, the fact that

Marinaro's failure to file a brief had caused his appeal to be dismissed.  Under these circumstances, the court thus concludes that Marinaro, acting with reasonable diligence, easily could have discovered this fact within six months of the August 12 letter, setting his starting date under § 2244(d)(1)(D) on this claim at February 12, 2007.

Consequently, Wright's final judgment date of April 21, 2006, is the starting date for AEDPA's one-year limitations period on all of his claims except for his ineffective assistance of counsel claim against Marinaro.  On that claim, Wright's starting date is February 12, 2007.  By filing his petition on October 16, 2013, five and one half years later, he did not file within one year of these starting dates.  Furthermore, AEDPA established four alternative starting points for the one-year statute of limitations.  Wright does not contest that his petition was not filed within any of the alternative bases for starting the one-year statute of limitations.

### B.        Equitable Tolling of the Statute of Limitations

But Wright's concession that he failed to file his petition within the one-year statute of limitations does not end consideration of this issue.  AEDPA's one-year limitations period can be statutorily or equitably tolled, or it can be overcome by a showing of actual innocence.  The petitioner can statutorily toll the one-year period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2). Equitable tolling, on the other hand, is applicable "when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights."  *Miller v. N.J. State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)).  Finally, a petitioner can overcome this one-year limitation with "a credible showing of actual innocence."  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

11

The magistrate judge analyzed each of these considerations, finding that none applies to Wright's case.  In his objections to the magistrate judge's report and recommendations, Wright contests only the judge's conclusion that equitable tolling does not apply.  The court will therefore consider only whether equitable tolling applies here.[5]  Without equitable tolling, Wright's claims in his petition will be time barred under AEDPA.

"[C]ourts should be sparing in their use of [equitable tolling]."  *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005).  To that end, a court should invoke equitable tolling only if the petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks removed) (quoting *Pace*, 544 U.S. at 418); *accord Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013).

Due diligence does not require "the maximum feasible diligence;" it requires "reasonable diligence."  *Schlueter*, 384 F.3d at 74 (citation omitted).  The court's "[d]etermination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case."  *Ross*, 712 F.3d at 799. Importantly, this reasonable-diligence obligation pertains not only to the filing of the habeas petition, but it also "exists during the period appellant is exhausting state court remedies." *LaCava*, 398 F.3d at 277.

The court also engages in a subjective analysis of whether the circumstances a petitioner faced were extraordinary.  *Ross*, 712 F.3d at 802.  Indeed, "[i]n analyzing whether the

---

[5] Even if Wright had objected to the magistrate judge's findings on statutory tolling and actual innocence, his objections would fail.  As the magistrate judge properly concluded, Wright cannot establish statutory tolling because the PCRA court and Superior Court both held that Wright's PCRA petition was time barred.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (holding that an untimely PCRA petition is not properly filed and will not toll the limitations period).  Moreover, Wright asserts no claims of actual innocence in his petition, so *McQuiggin v. Perkins* is inapplicable.

circumstances [a petitioner] faced were extraordinary, the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, . . . but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period. *Id.* at 802–03 (citations omitted) (internal quotation marks omitted).  The petitioner must also establish a "causal connection" between the extraordinary circumstances and the failure to file a timely habeas petition.  *Id.* at 803.

Attorney abandonment can provide a ground for equitable tolling of the one-year limitation.  *See Holland*, 560 U.S. at 651–52.  In *Ross v. Varano*, for example, the Third Circuit held that the petitioner, Ross, was entitled to equitable tolling because he was reasonably diligent in pursuing his rights, and his attorney's abandonment was extraordinary and stood in his way. 712 F.3d at 804.  There, Ross was convicted of first-degree murder in state court on June 14, 2000.  *Id.* at 788.  Shortly thereafter, he received court-appointed counsel, Christopher Sheffield, to whom he wrote over ten letters from July 2000 to September 2003 inquiring about the status of his appeal.  *Id.* at 791.  Sheffield, however, responded to only three of these letters.  *Id.*

During that time, Sheffield also affirmatively misled Ross on the status of his direct appeal.  In 2001, while visiting Ross for the first and only time, Sheffield told Ross that his appeal was moving forward.  *Id.* at 790.  Yet three days later, Sheffield filed a motion with the state court to withdraw Ross's direct appeal in order to pursue ineffective assistance of counsel claims through the PCRA process.  *Id.*  Although Sheffield's motion was granted, he never filed a PCRA petition.  *Id.*  Moreover, in one of Sheffield's three letters to Ross, dated after Sheffield had withdrawn the direct appeal, he assured Ross that he would file an appeal by the end of that month.  *Id.* at 791–92.  But he never filed it.  *Id.* at 792.

13

Despite these circumstances, Ross continued to pursue his inquiries about his appeal.  In addition to writing over ten letters to Sheffield between 2000 and 2003, Ross repeatedly called him between 2004 and 2008 to inquire about his case, but Sheffield never accepted his calls.  *Id.* at 792, 800–01.  Ross also turned to the state court himself: he contacted it two times between 2004 and 2008 to inquire about the status of his case, and he filed a pro se PCRA petition in June 2008.  *Id.* at 792.  Finally, after three more years of frustrated attempts to assert his rights through the state process, Ross filed a pro se habeas petition.  *Id.* at 793.  The Commonwealth opposed his petition, arguing that it was time barred under AEDPA.  *Id.*

Rejecting this argument, the Third Circuit held that Ross was entitled to equitable tolling of the one-year limitations period.  Given Ross's persistent efforts, the Third Circuit found that he had "exercise[d] reasonable diligence in the circumstances that he faced."  *Id.* at 802.  In determining that Ross's situation constituted extraordinary circumstances, it focused on "Sheffield's misleading statements on matters that should have been within [his] knowledge, . . . [his] unresponsiveness and neglect of the case, and Ross's limited abilities."  *Id.* at 803.  Ross's "limited abilities" were his "limited intellectual ability and education" and "poor mental health." *Id.*  These "fundamental disadvantages," according to the Third Circuit, were "exacerbated by Sheffield's extreme neglect, including but not limited to his refusal to accept Ross's calls, overall failure to communicate with Ross, inaccurate assurances regarding the status of Ross's appeal on those very limited occasions when he did communicate with Ross, and misstatements of law." *Id.*  The Third Circuit also concluded that these extraordinary circumstances precluded Ross from pursuing his state court remedies and filing a timely habeas petitioner.  *Id.* at 805.

Here, like in *Ross*, Wright argues that the one-year limitations period should be equitably tolled because his appellate attorney, Marinaro, abandoned him during the direct review process.

He claims that he was diligently pursuing his rights throughout his direct appeal process.  As support for this argument, he refers to Marinaro's May 2006 letter to him, written over a month after Wright's direct appeal had been dismissed, in which Marinaro stated, "I would like to extend an apology to you for my failure in not responding sooner to your letters of inquiry."  He seems to argue that these "letters of inquiry" help establish reasonable diligence on his part in pursuing his rights through the direct appeal process.  Additionally, he points to his family's efforts in 2010 to ascertain the status of his appeal by hiring Sturm.

He also claims that Marinaro's abandonment constitutes the extraordinary circumstances required for equitable tolling.  He relies on Marinaro's May 2006 and August 2006 letters as support for this argument, too, drawing on several aspects of them.  He highlights how Marinaro admitted in the May letter to failing to respond to Wright's previous "letters of inquiry."  He also argues the date of these letters and their contents—or lack thereof—support a finding of extraordinary circumstances.  According to Wright's objections, Marinaro's letters—dated after Wright's judgment became final—never explicitly mentioned that Wright's direct appeal had been dismissed.  He further contends that Marinaro never informed him that he had failed to file a brief for Wright's appeal, causing his appeal to be barred procedurally by the Superior Court. Because of this alleged abandonment, Wright argues that he missed the April 21, 2007, deadline for filing his habeas petition.

But these facts are not even close to the conduct that the Third Circuit found was extraordinary in *Ross*.  Although Marinaro's conduct is far from commendable or exemplary, it does not constitute the extraordinary circumstances necessary for equitable tolling.  That is because Marinaro's conduct did not rise to the egregious level of extreme neglect such that it stood as a "severe obstacle" in Wright's way of filing a timely habeas petition.  *See Ross*, 712

F.3d at 802–03 (stating that the proper inquiry is how "severe an obstacle" the attorney's conduct was to the petitioner's filing a timely petition).

To be sure, Marinaro failed to communicate with his client on at least a few occasions, as evidenced by the first line in Marinaro's May 2006 letter to Wright: "I would like to extend an apology to you for my failure in not responding sooner to your letters of inquiry."  But Wright does not allege exactly how many letters he sent during this time; it could have been just two or three, or it could have been more.[6] Nor does he claim that Marinaro refused to accept a large amount of phone calls or any phone calls at all.  In fact, the only attempts at communication to which Wright refers are the "letters" he sent to him before May 2006, which may be as few as two.  Wright has thus failed to show that Marinaro's conduct indicated an overall failure to communicate with him.

Marinaro also never explicitly told Wright in his May 2006 and August 2006 letters that Wright's appeal had been dismissed and implied in the May letter that Wright's appeal was still ongoing, but the severity of these actions is mitigated by other statements in the August letter.  In that letter, Marinaro told Wright in so many words that his direct appeal was over by instructing him to "contact [his] office regarding your desire to proceed with an ineffective assistance claim on collateral appeal."  At this point, Wright still had almost eight months remaining on his one-year limitations period to file his petition under AEDPA.

Even if Wright did not conclude from Marinaro's August 2006 letter that his direct appeal process was over, he could have contacted Marinaro—as instructed in the letter—to start pursuing his ineffective assistance claims through the PCRA process.  Or he could have pursued

---

[6] In his filed objections, Wright quotes Marinaro as stating in the May 2, 2006, letter that he was sorry for taking so long to respond "after your numerous letter [sic] of inquiry."  The actual letter says "your letters of inquiry." Moreover, in an affidavit attached to his petition, he refers to these letters as his "several attempts" to contact Marinaro.

a PCRA petition himself.  A timely filed PCRA petition at this time would have statutorily tolled the one-year limitations period until the conclusion of Wright's PCRA process.  *See* 28 U.S.C. § 2244(d)(2).  Consequently, Marinaro's actions were not such a "severe obstacle" that they prevented Wright from filing a timely petition, so his conduct cannot constitute the extraordinary circumstances required for equitable tolling.

Even more importantly, Wright's reasonable diligence objection also fails.  Wright does not adequately contend, nor does the record show, that he pursued his state court remedies with the requisite diligence.  Wright took very few documented, affirmative actions to pursue his state court remedies.  As discussed previously, Wright does not allege the extent of his attempted contacts with Marinaro.  His objections quote Marinaro's May 2006 letter apologizing for not responding to Wright's "letters," and his affidavit refers to these unanswered letters as his "several attempts to contact" Marinaro.  But nowhere does he allege specifically how persistent he was with his efforts; he makes only these somewhat vague allegations.

And after May 2006, the month Marinaro sent this letter, the record and Wright's habeas petition and objections suggest that Wright took little action on his case until 2010.  Marinaro's August 2006 letter to Wright does not state that Wright had attempted to call or write him about his case since the May 2006 letter.  In December 2007, he filed a pro se motion for reconsideration of his sentence, which was denied in that same month.  About three years later, Wright's family hired Sturm to investigate Wright's case, at which time she discovered that Marinaro's 2006 direct appeal had been dismissed.  She relayed this news to Wright in a December 3, 2010, letter and filed a PCRA petition in March 2011.

In short, that leaves his "letters" to Marinaro before May 2006 and his 2007 motion for reconsideration of his sentence as the only documented, affirmative actions he took between his

plea/sentencing in July 2005 and the time in 2010 when his family hired Sturm. These actions are inadequate to establish reasonable diligence, for this limited pursuit of his state court remedies does not rise to the level of persistence and consistency required to show reasonable diligence. *See Ross*, 712 F.3d at 802 (finding that petitioner need not make "Herculean efforts" in pursuing his state court remedies, but he must show "perseverance and diligence").

The court realizes that some of Wright's initial inaction can be partially attributed to Marinaro's letter to Wright of May 2, 2006, in which he failed to tell Wright explicitly that his direct appeal had been denied and implied that it was still ongoing. But, again, Marinaro's August 2006 letter strongly suggested that his direct appeals process was over, telling Wright to "contact [his] office regarding your desire to proceed with an ineffective assistance claim on collateral appeal." Moreover, Wright took almost no action after August 2006 to determine the disposition of his direct appeal until 2010 when his family hired Sturm. Wright certainly could have inquired earlier than 2010 about the status of his 2006 direct appeal. Wright waited too long, though, so he cannot prove reasonable diligence, and equitable tolling does not apply. *See Pace*, 544 U.S. at 419 ("Under long-established principles, [a] petitioner's lack of diligence precludes equity's operation.").

Finally, equitable tolling would not save Wright's petition even if it applied. If Wright could invoke equitable tolling, the time limit for his petition would be equitably tolled only until around the time that he indisputably learned his direct appeal had been dismissed. As Wright admits, that time was in December 2010 when Sturm told him in her letter. At that point, he could have filed a protective habeas petition with this court before beginning his PCRA proceedings. *See id.* at 416 ("A prisoner seeking state postconviction relief might avoid [a time barred habeas petition] . . . by filing a 'protective' petition in federal court and asking the federal

18

court to stay and abey the federal habeas proceedings until state remedies are exhausted.").  But Wright instead filed a counseled PCRA petition in March 2011 that did not toll the limitations period because the state court found it time barred.  *See id.* at 417 (holding that an untimely PCRA petition is not properly filed and will not toll the limitations period).  He then filed his habeas petition on October 16, 2013, two and a half years after learning that his direct appeal had been dismissed.  Wright's petition would therefore still be time barred.

C.      **Applicability of *Alleyne v. United States***

The last objection raised by Wright is his argument that the magistrate judge never addressed the constitutionality of his sentence.  Specifically, Wright contends that the magistrate judge failed to consider and apply the rule from *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  In *Alleyne*, which extended *Apprendi v. United States*, 530 U.S. 466 (2013), the Court held that any facts that increase a defendant's minimum sentence are sentencing elements that must be submitted to a jury.  *Id.* at 2163.  Regardless of whether this rule in fact implicates Wright's sentence, he cannot invoke it as a basis for relief.

The court cannot address this claim because Wright failed to raise it in accordance with the Rules of Civil Procedure for the Eastern District of Pennsylvania.  Under Local Rule of Civil Procedure 72.1(IV)(c), issues that "could have been presented" to the magistrate judge before the filing of the report and recommendation "shall not be raised . . . unless the interest of justice requires it."  District courts in this circuit have concluded that this rule precludes district court review of claims that are raised for the first time in the petitioner's objections to the magistrate's report and recommendation and not previously raised in the habeas petition.  *See, e.g.*, *Handy v. Pa. Bd. of Probation and Parole*, No. 13-1741, 2013 WL 6578926, at *1–2 (E.D. Pa. Dec. 16, 2013); *Ramos v. Kyler*, No. Civ.A. 03-2051, 2004 WL 828363, at *4 (E.D. Pa. Apr. 12, 2004).

19

Wright raises this *Alleyne* claim for the first time in his objections to the magistrate judge's report and recommendation, so it cannot be reviewed here.

But even if this claim were reviewable, it would still not provide a basis for habeas relief. First, Wright did not have a jury trial or a jury to which to submit the issue. He entered a guilty plea. Second, like his other claims, it is time barred by AEDPA. The Court decided *Alleyne* on June 17, 2013, long after Wright's judgment became final on direct appeal on April 21, 2006. As a result, absent statutory or equitable tolling, which are inapplicable here, Wright could get around AEDPA's one-year limitations period only by way of § 2244(d)(1)(C), which sets a later starting date for the limitations period when the defendant asserts a constitutional right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Although *Alleyne* is a new constitutional rule, it is not one that applies retroactively. *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014). Wright thus could not assert this claim even if he had raised it in his habeas petition.[7][8]

## IV.    Conclusion

For these reasons, the court will overrule Wright's objections and dismiss his petition as time barred under § 2254. The court also will not issue a certificate of appealability. A habeas petitioner may not appeal the dismissal of his petition unless he receives a certificate of

---

[7] On March 12, 2014, petitioner filed a letter dated March 4, 2014, which the court considered to be a motion to amend/correct (Document No. 11). On September 23, 2014, I granted the motion to amend and stated that I would consider the letter/motion in connection with my review of the petitioner's Section 2254 petition. As the magistrate judge recommended in footnote 11, this additional claim is also untimely filed, is patently frivolous, and is not raised in petitioner's objections to the magistrate judge's report and recommendation. The amended motion will, therefore, be dismissed and denied.

[8] On October 9, 2014, the petitioner filed a supplemental motion to amend Section 2254 petition (Document No. 22). The supplemental motion is likewise untimely, is patently frivolous, and is not raised in the petitioner's objections. **IT IS, THEREFORE, DISMISSED AND DENIED.**

appealability.  28 U.S.C. § 2253(c).  A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  *Id.*  For the reasons set forth in this memorandum, Wright has not made a substantial showing of the denial of a constitutional right; therefore, the court will not issue a certificate of appealability.  An appropriate order follows.